Mary **CROSSLEY**

v.

Arnold R. **LIEBERMAN, Appellant.**

No. 88–1611.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
Rule 12(6) Jan. 23, 1989.

Decided Feb. 16, 1989.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellant.

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Arnold Lieberman, an attorney, appeals from a judgment for $2,000 against him in favor of Mary Crossley in Crossley's action under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692 *et seq.* The dispute arises out of a letter sent by Lieberman seeking payment of $297.79 owed by Crossley to Fleet Consumers Discount Company (Fleet), secured by a mortgage on Crossley's home. Jurisdiction is based on 28 U.S.C. § 157(c)(1).

Lieberman's August 4, 1986 letter to Crossley is as follows:

MARY CROSSLEY

837 ALMOND STREET

PHILADELPHIA

   DATE: AUG. 4, 1986

   PLAINTIFF: FLEET CDC

   ACCOUNT # 26486721

   AMOUNT DUE 297.79

Dear Sir and Madam:

The above matter has been referred to me for collection. I am obligated to demand immediate payment of the full amount of the plaintiff's damages and costs as stated above.

Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you. This can result in the listing of your property, either Real Estate or Personalty, for forced Sale by the Sheriff, after appropriate legal proceedings have been concluded.

Such action will result in additional expense to you, for the Court fees and Sheriff's costs.

Full payment should be in my hands within one week. You may telephone me for additional information.

       Very truly yours,

       s/ ARNOLD R. LIEBERMAN

       ARNOLD R. LIEBERMAN, ESQ.

Crossley had not received any prior demand from Fleet. She was then a sixty-eight year old widow who had resided in her home since 1940. She was then employed as a noon-time aid for the Philadelphia School Board. Upon receipt of the letter, Crossley telephoned the number on the letterhead and spoke to a man she believed to be Lieberman. When she said she could not pay the entire bill, the man

responded that she should sell her house and become a "bag lady." Interpreting the letter as a threat to sell her home, she reacted in panic. She quit her part-time job with the School Board so that she could cash in her modest pension contributions of approximately $800 in order to pay off the $297.79 debt.

On May 15, 1987, Crossley filed an action to adjust her debts under Chapter 13 of the Bankruptcy Act. 11 U.S.C. § 1301 *et seq.* An adversary proceeding was then filed on her behalf under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692k. Lieberman was duly served, but did not answer. Crossley moved on July 22, 1987, for a default judgment. A default was entered against Lieberman and a hearing on damages was scheduled for August 12, 1987. On August 25, 1987, Lieberman finally responded, opposing the entry of a default judgment, and the bankruptcy court vacated the default. Trial was scheduled for October 13, 1987, but it was postponed in order to permit Lieberman to take Crossley's deposition at her home. She was deposed on October 30, 1987, and on November 5, 1987, her attorney moved to admit the transcript of that deposition in evidence in lieu of her live testimony because her poor health precluded her attendance at trial. Lieberman objected, but the motion was granted, subject to the right of Lieberman to take a supplemental deposition of Crossley on or before November 30, 1987. The trial was continued until December 15, 1987. Lieberman did not take a supplemental deposition and did not appear for the December 15, 1987 trial date. The trial was then continued until January 6, 1988. Lieberman's counsel first agreed to produce him at trial, but just prior to the New Year's weekend withdrew that offer. Crossley's counsel made unsuccessful efforts to subpoena Lieberman. On January 6, 1988, Lieberman did not appear.

The trial went forward on January 6, 1988. Crossley's counsel put in evidence her deposition, certain discovery responses, and Lieberman's testimony in *Littles v. Lieberman,* Bankruptcy No. 87–00092S, Adversary No. 87–0247S, and a certified record of the Philadelphia Court of Com-

mon Pleas reflecting Lieberman's debt collection activities. On February 2, 1988, the bankruptcy court proposed findings of fact and conclusions of law recommending judgment in Crossley's favor for $500. Lieberman filed objections to the recommended findings. The district court modified the bankruptcy court's findings of fact and conclusions of law, increasing the award to $2,000. 90 B.R. 682 (1988). This appeal followed.

## A.

### The Prothonotary's Record

■ Lieberman contends that the bankruptcy court 'erred in admitting the certified record of the Philadelphia Court of Common Pleas because the record was not properly authenticated under Fed.R.Evid. 902. This contention is groundless. The last page of the exhibit contains the raised seal of the Philadelphia Court of Common Pleas and the signature of the prothonotary. Thus the document is self-authenticating. Fed.R.Evid. 902(1), (4). As such it is an admissible public record. Fed.R.Evid. 1005. *See also* Fed.R.Evid. 803(6), (8).

## B.

### The Crossley Deposition

■ Lieberman contends that the court erred in admitting Crossley's deposition pursuant to Fed.R.Civ.P. 32(a)(3)(C). He contends that there is insufficient evidence of her disability to permit use of the deposition under the rule.

The district court found evidence of Crossley's disability in her answers to defendant's questions on pages fifteen through seventeen of her deposition. This testimony referred to the fact that she was a heavy smoker and had trouble breathing. Additionally, pages seventy-two through seventy-three of the deposition showed that she had no car available for her use. Lieberman counters this point by arguing the existence of public transportation. Such an argument, however, belittles the extreme and often arduous effort of an elderly, infirmed individual in using such transportation. Lieberman also argues that Cross-

ley was able to go to her attorney's office. This visit occurred, however, in August 1986. The trial was in December 1987, which was over a year later. The district court contemplated the probable deterioration of Crossley's physical condition in that time. Lieberman also describes Crossley's part-time position as a noon-time aid to attempt to convince us of Crossley's adequate mobility. Again, we must examine the time frame. She quit her job in August 1986. The trial was in December 1987. Any physical deterioration would probably have precluded Crossley from supervising "young children during their most active period in school." Lieberman offered no evidence to counter Crossley's inability to attend trial.

■ Lieberman asserts prejudice because he took Crossley's deposition solely for discovery purposes. He contends that he was deprived of the opportunity to cross-examine Crossley. This contention is baseless because Lieberman was given very broad latitude in questioning Crossley. Additionally, the bankruptcy court gave Lieberman a second opportunity to depose Crossley. He never exercised this option. The district court opined that the probative value of Crossley's deposition outweighed any prejudice to Lieberman. This ruling was not an abuse of discretion. Fed.R. Evid. 403.

## C.

### Lieberman is a Debt Collector

■ Lieberman argues that he is not a debt collector as defined by 15 U.S.C. § 1692(a). His argument is meritless. The statute as enacted on September 20, 1977, contained an exception for attorneys collecting debts on behalf of clients. Fair Debt Collection Practices Act of 1977, Pub. L. No. 95–109, 91 Stat. 874 (1977) (codified at 15 U.S.C. § 1692 *et seq.* (1982)). Congress deleted that exception, however, in 1986. Fair Debt Collection Practices Act, Amendment, Pub.L. No. 99–361, 100 Stat. 768 (1986) (codified as amended 15 U.S.C.A.

§ 1692 *et seq.* (West Supp.1988)). The Act originally exempted attorneys "on the basis that attorneys were only incidentally involved in debt collection activities." H.Rep. No. 405, 99th Cong.2d Sess. (1985), *reprinted in* 1986 U.S.Code Cong. & Ad. News 1752, 1759. Data illustrated that by 1985, more lawyers were engaged in the debt collection industry than non-attorney debt collectors.[1] Additionally, to procure clients, many attorneys were advertising their exemption from the FDCPA as an advantage to creditors. *Id.* at 1756. Repeal of the exemption thus requires attorneys to comport with the standards of conduct that is required of lay debt collectors.

A "debt collector" is defined by the amended act as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a(6) (West Supp.1982 & 1988). A leading commentator on the statute observes:

> Both the legislative history of this amendment and the case law regarding similar provisions in the Federal Consumer Credit Protection Act demonstrates that any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA. Both sides in the floor debate conceded that the amendment would make the act apply not only to those lawyers who have collection practices but also to those who collect on an occasional basis and the small law firm which collects debts incidentally to the general practice of law.

R. Hobbs, *Attorneys Must Now Comply With Fair Debt Collection Law*, X Pa.J.L. Rptr., No. 46, 3 (Nov. 21, 1987).

The regularity of Lieberman's debt collection activity is established by Lieber-

---

1. Data showed that 5,000 attorneys were engaged in the debt collection industry, compared to approximately 4,500 lay debt collection firms.

H.Rep. No. 405, 99th Cong.2d Sess.(1985), *reprinted in* 1986 U.S.Code Cong. & Ad.News 1752, 1752.

man's own testimony on direct examination in the *Littles* case:

> Q. Did you regularly conduct business on behalf of creditors at that period of time? Was that a principal part of your practice?
>
> A. It's a part of it.
>
> Q. Was it a principal part in September of 1986?
>
> A. Yes.
>
> Q. Did your practice for those creditors include and was it principally the collection of debt?
>
> A. Yes.

App. 101. Additionally, Crossley's introduction of a certified record from the docket of the Court of Common Pleas of Philadelphia County, clearly showed Lieberman's volume of collection activity.[2] Furthermore, evidence demonstrated that Lieberman had written the letter he sent to Crossley to at least two other debtors, that in addition to Fleet, he represented at least three other creditors, and that he had had an ongoing relationship with Fleet for at least ten years.

Lieberman argues that he was merely an agent for Fleet and therefore Fleet was the true debt collector. His brief states: "Mr. Lieberman was not asking Crossley to send him the money and that he would then pay the debt to the creditor, Fleet. Instead, he was, as an agent, advising the debtor to pay the creditor Fleet directly." Appellant's Brief at 15. This argument, however, is undermined when we refer to the August 4, 1986 letter which Lieberman sent to Crossley. The letter specifically reads: "Unless *I receive payment* in full within one week from the date of this letter, I will be compelled to proceed with suit against you." The letter unequivocally states that Lieberman himself is collecting the money. Nowhere is it intimated that Crossley was to send money to Fleet directly. Thus Lieberman is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

### D.

### Lieberman Violated the Statute

◼ The Fair Debt Collection Practices Act prohibits the use of abusive, deceptive and unfair debt collection practices by persons engaged in the debt collection industry. As discussed *supra,* before the 1986 amendment to the Act, consumers were tormented with numerous abuses as a result of the attorney exemption.

These abuses, all prohibited by the Act, but inapplicable due to the attorney exemption, included late night telephone calls to consumers, calls to consumers' employers concerning the consumers' debts, frequent and repeated calls to consumers, disclosure of consumers' debt to third parties, *threats of legal action on small debts where there is little likelihood that legal action will be taken,* simulation of legal process, harassment, abuse, *threats of seizure, and attachment and sale of property where there is little likelihood that such action will be taken.* (emphasis added).

H.Rep. No. 405, 99th Cong.2d Sess. (1985) *reprinted in* 1986 U.S.Code Cong. & Ad. News 1752, 1755. Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice. A debt collection letter on an attorney's letterhead conveys authority and credibility.

Lieberman's letter to Crossley involved many of the abusive tactics which the statute sought to ameliorate in the debt collection industry. The illegality of Lieberman's behavior must be viewed in context with Pennsylvania law governing the foreclosure of residential mortgages. Foreclosure of residential mortgages with a principal amount of $50,000 or less is governed by Act 6 of 1974, 41 P.S. § 101 *et seq.* Act 6 was promulgated to protect debtors who carry mortgage loans.

**2.** Lieberman filed 32 cases in the Court of Common Pleas. Of those cases, 22 were mortgage foreclosures, 2 were ejectments and 7 were general civil actions with financial institutions as plaintiffs. From June 1986 through December 1987, Lieberman filed 175 mortgage foreclosures and other collection suits for financial institutions.

The relevant portion of Act 6 involved in this case is 41 P.S. § 403 which provides:

*Before* any residential mortgage *lender may accelerate the maturity* of any residential *mortgage obligation,* commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, *such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance* as provided in this section.

41 Pa.Cons.Stat.Ann. § 403 (Purdon 1988) (emphasis added). In addition to the thirty days notice required before accelerating a mortgage obligation, the statute also requires that such notice be in writing. 41 Pa.Cons.Stat.Ann. § 403(b) (Purdon 1988). Furthermore, the statute requires that the notice must "clearly and conspicuously" inform the debtor of the nature of the default, his right to cure the default, what performance is required to cure the default, and the time within which the debtor must cure the default. 41 Pa.Cons.Stat. Ann. § 403(c) (Purdon 1988).

Because of the protective provisions of Act 6, Lieberman's August 4, 1986 letter violated the federal statute in several ways. Specifically, Lieberman violated § 1692e which provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C.A. § 1692e (West 1982).

Crossley correctly points out that Lieberman falsely represented the legal status of the debt by implying that the mortgage foreclosure case was already in litigation. His letter referred to Fleet as "plaintiff" and he made a demand for "plaintiff's damages and costs." Such verbiage is inaccurate since a "plaintiff" and "costs" are non-existent until the filing of a lawsuit. There was no such filing on August 4, 1986. As an attorney, Lieberman knew of these technicalities, therefore we think it fair to surmise that his word choice was carefully calculated to suggest to Crossley that she was in the midst of a suit.

Lieberman's letter also threatened to take action "within one week" of the date of the letter unless payment was made in full. As an experienced foreclosure attorney, Lieberman knew that because of Act 6 he was not permitted to institute suit within one week. Thus, he really had no intention to do so.

The August 4, 1986 letter was also misleading because it failed to inform Crossley, as mandated by Act 6, of her right to cure the default and that a sheriff's sale of her home was some time away and not at all inevitable. Instead, the letter implied that nonpayment of the debt would result in the imminent sale of her home. Lastly, Lieberman does not refute the fact that he failed to provide Crossley with a written validation notice as required by § 1692g.

Lieberman maintains that his letter was "non-threatening, non-violent and non-offensive." Appellant's Brief at 17. He states that "[t]he only reasonable conclusion from the letter is that if the debtor did not pay the debt, which was then due and owing, that a decision would be made at the end of that week concerning the need to proceed with litigation." Such an interpretation ignores the clear wording of the letter. Usage of the phrase, "I will be compelled to proceed with suit against you" does not reflect a decision-making process. The letter clearly implies that legal action will commence if payment is not received within a week. Lieberman's letter obviously was meant to frighten Crossley into paying her debt to Fleet.

Thus we reject Lieberman's contention that if he is a debt collector he did not violate the statute.

### E.

#### The Damage Award was Proper

■ The civil liability section of the federal statute provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

15 U.S.C.A. § 1692k (West 1982). Lieberman does not specifically address the district court's award of $1,000 in actual damages under section 1692k(a)(1). In the circumstances of this case an attack on the award of actual damages to Crossley in the amount of $1,000 would in any event be fruitless. Instead he concentrates his fire on the award of additional damages under section 1692k(a)(2)(A).

Additional damages are to be determined by such factors as "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance and the extent to which such noncompliance was intentional." 15 U.S.C.A. § 1692k(b)(1) (West 1982). Courts are empowered to consider other factors that are deemed relevant. *Id.* The thrust of Lieberman's argument concerning the increase in damages under § 1692k(a)(2)(A) is that the district court did not consider the factors enumerated in § 1692k(b)(1). He contends that "the district court increased the bankruptcy court's award of additional damages of one hundred dollars ($100.00) to one thousand dollars ($1,000.00) because Lieberman did not admit his mistake and undertake not to repeat it." Appellant's brief at 12. The district court's opinion clearly refutes this contention.

The court carefully analyzed each of the factors set forth in § 1692k(b)(1). As to frequency and persistence of noncompliance the district judge stated that on the record he only had evidence of the case at bar. A single incident, the court opined would permit a nominal award of $100 but would preclude a larger amount. He then assessed Lieberman's intentions. The court noted that the August 4, 1986 letter was sent less than a month after the FDCPA was amended to eliminate the exception for attorneys. He stated that ignorance of the law would not be an excuse, but he would have treated the letter as "a transitional aberration not to be repeated." App. 244. In that context of leniency, the court stated that an admission from Lieberman with a vow not to repeat the incident would have avoided the assessment of additional damages.

The district court then reviewed Lieberman's strategy since the onset of the case to illustrate the lack of concern over the letter that violated the federal statute. Lieberman avoided the bankruptcy court's jurisdiction until such time that the complaint was in default. He refused to appear at scheduled hearings and avoided the service of a subpoena to appear. He denied being a debt collector, and fought to preclude the admission into evidence of a certified record from the Court of Common Pleas of Philadelphia County that showed his volume of cases involving debt collection. Lieberman also refuted the plain language of the letter.

The district court observed that such a letter cannot be sent if a mortgage foreclosure is intended because of Act 6 of 1974, 41 P.S. § 403. The court thus properly concluded that the letter was sent to cause Crossley to think that a foreclosure was imminent and thus scare her into paying her debt. Such conduct is egregious noncompliance with the statute. The district court found that the denial of the nature of his business and the plain language of the letter were indications that Lieberman intended to continue his course of conduct.

Thus, after a thorough review of the record, the district court had sufficient evidence to assess Lieberman's noncompliance and intention not to comply. The district court's findings are entitled to deference unless clearly erroneous under Federal Rule of Civil Procedure 52(a). There was a plethora of evidence to sustain those findings. The district court did not abuse its discretion in awarding the statutory maximum of $1,000 in additional damages under § 1692k(a)(2)(A).

## F

### Conclusion

There are no trial errors. The court correctly applied the terms of the Fair Debt Collection Practices Act. The court did not abuse its discretion in awarding $1,000 in actual and $1,000 in additional damages. The judgment appealed from will therefore be affirmed.