Elizabeth ROSA, Plaintiff,

v.

James C. GAYNOR, Defendant.

Civ. No. N–88–269(JAC).

United States District Court,
D. Connecticut.

Nov. 21, 1989.

Joanne S. Faulkner, New Haven, Conn.,
for plaintiff.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, Conn., for defendant.

Stephen Park, Robert Langer, Asst. Attys. Gen., Hartford, Conn., amicus curiae.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This action arose out of a collection letter dated May 18, 1988, which James G. Gaynor ("defendant"), an attorney, sent to Elizabeth Rosa ("plaintiff"). Plaintiff claims that the letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, because it (1) threatened to take legal action defendant could not or did not intend to take, (2) misrepresented its source, and (3) was generally unfair and deceptive. Now pending before the court is plaintiff's motion for summary judgment on liability only filed December 27, 1988, and defendants cross-motion for summary judgment filed February 8, 1989. Because the standard we apply in this case might affect future interpretations of the Connecticut Unfair Trade Practices Act, C.G.S. § 42–110a et seq. ("CUTPA"), the State of Connecticut submitted a Memorandum of Law of Amicus Curiae State of Connecticut (filed May 16, 1989).

Based on the full record of this case, the plaintiff's motion for summary judgment on liability only is hereby GRANTED, and defendant's cross-motion for summary judgment is hereby DENIED.

## I.

The following facts are undisputed. Defendant is a sole practitioner in Ohio, not licensed to practice in Connecticut. In sending the letter, defendant represented both First Interstate Bancard and the Lucas Credit Bureau. Since January 1, 1987, he has handled two First Federal Interstate Bancard collection cases involving a debtor resided in Connecticut, at least one of which was referred to a Connecticut attor-

ney for suit. The letterhead and signature used for the letter in dispute were printed by a printing company, and the letter itself was computer generated. The postage meter used to send the letter was registered to the Lucas Credit Bureau.[1] At the time the letter was sent, defendant had made no investigation of the debt and was not in possession of any documents regarding it. *See* Defendant's Answers to First Set of Interrogatories (filed Sept. 26, 1988). The letter was "generated" by a computer owned by Lucas County Credit Bureau and operated by one of their employees. *See* Defendant's Supplemental Answers to Interrogatories (filed Nov. 15, 1988). Defendant handles all accounts for Lucas Credit Bureau on a contingent fee basis, receiving twenty-five per cent of any sums he collects. *See* Defendant's Answers (filed Dec. 22, 1988).

The letter in question appears on the letterhead of "James G. Gaynor, Attorney at Law [address and phone]." It reads:

Re: First Interstate Bancard Balance: $2436.61

The above account has been referred for collection in full and information obtained will be used for that purpose.

Unless you dispute the validity of any portion of this claim within 30 days after receipt of this notice, we will assume it to be valid. If you notify us within that time, we will secure evidence of the debt, and mail it to you. We will also furnish you with the creditor's address.

Otherwise, we may be forced to proceed with a lawsuit. After judgment, any remedy may be filed against you that is available to attorneys in your area. This may include garnishment, levy on real or personal property, or calling you into court for a debtor's examination. This is your final letter.

Defendant's name is typed at the bottom and what appears to be his signature appears over it.

---

**1.** Plaintiff appears to dispute defendant's claim that he (defendant) reimbursed the collection agency for postage and computer time on the

letters which went out over his name. I do not find this to be a material fact.

While the parties differ about other facts, none is material to the determination of these motions.

## II.

■ Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Finally, mere conclusory allegations and denials in legal memoranda are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

## III.

FDCPA forbids a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In order to recover, plaintiff need only show one violation. *Steele v. I.C. Systems,* Civ. No. N–85–851(JAC), slip op. at 10 (D.Conn. Mar. 13, 1987) and cases cited therein.

■ The parties have raised the issue of whether the Federal Trade Commission ("FTC") adopted a new standard in 1983 for determining whether an act or practice is deceptive.[2] Specifically, defendant argues that while the least protected consumer was protected before 1983, the appropriate standard is now the "reasonable consumer." The State of Connecticut, in an amicus brief, and plaintiff contend that the appropriate standard has not changed.

■ Both the purposes of the FDCPA and the history of its enforcement support a finding that the statute continues to protect the least sophisticated consumer. The Court of Appeals noted more than fifty years that consumer protection laws are not "made for the protection of experts, but for the public—the vast multitude which includes the ignorant, the unthinking, and the credulous," *Charles of the Ritz Dist. Corp. v. FTC,* 143 F.2d 676, 679 (2d Cir.1944) (citation omitted). While the passage of time has added to the number and variety of practices that consumer protection laws counter, it has not altered the purpose of those laws or the fact that they do not distinguish between persons. The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice. However, it does reach the reasonable interpretation of a notice by even the least sophisticated. The FDCPA does not distinguish among debtors, determining that only those with a certain amount of education or a certain knowledge of commercial or legal practices are worthy of protection.

This court continues to join "the overwhelming majority of federal courts who have ... conclud[ed] that the 'least sophisticated consumer' standard is appropriate." *Steele, supra* at 6. *See also Swanson v. Southern Oregon Credit Serv.,* 869 F.2d

---

**2.** Use of the term "deceptive" in FDCPA is informed by its use in other federal consumer laws, including the Federal Trade Commission Act, 15 U.S.C. § 45(a). *Steele, supra,* at 4–5.

1222, 1225 (9th Cir.1988), *Jeter v. Credit Bureau,* 760 F.2d 1168, 1173–75 (11th Cir. 1985), and *United States v. Central Adjustment Bureau,* 667 F.Supp. 370, 375 (N.D.Tex.1986). While our Court of Appeals has not addressed this question directly, one of its recent decisions suggests a willingness to afford broad protection under the FDCPA. In *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir.1989), the Court of Appeals reversed a district court finding that no violation had occurred; in the letter at issue there, no explicit reference is made to attorneys or court proceedings, but "[t]he clear import of the language, taken as a whole, is that *some* type of legal action has already been or is about to be initiated...." *Id.* at 25.

The first FTC decision to give adjudicative effect to the supposed change in the Federal Trade Commission's policy, explicitly states that the new definition is meant to clarify rather than change the standard of deception. "We find [our previous] approach ... to be circular and therefore inadequate to provide guidance...." *In re Cliffdale Assoc.,* 103 F.T.C. 110, 164 (1984). "These elements [of the new definition] articulate the factors actually used in most earlier Commission cases ..." and "the requirement that an act or practice be considered from the perspective of a 'consumer acting reasonably in the circumstances' is not new." *Id.* at 165. In sum, the FDCPA continues to protect the least sophisticated debtor and any change in wording was intended to articulate or restate, not to alter, the existing standard.

### IV.

■ I turn now to the application of this standard to plaintiff's allegations and the undisputed facts of this case. Plaintiff claims that the May 18, 1988 letter violated the FDCPA by threatening to take legal action which defendant could not or did not intend to take, by misrepresenting its source, and because it was generally unfair and deceptive.

### A.

The letter referred specifically to legal action, stating that,

[if you do not dispute this debt within thirty days,] we may be forced to proceed with a lawsuit. After judgment, any remedy may be filed against you that is available to attorneys in your area. This may include garnishment, levy on real or personal property, or calling you into court for a debtor's examination. This is your final letter.

Plaintiff notes that the letter fails to disclose that defendant is not admitted to practice in Connecticut, so that the letter could result in the false impression (created by the phrase *"we* may be forced....") that defendant could and would proceed to file suit in Connecticut immediately. Plaintiff notes that the other likely impression (created by the phrase *"After* judgment, any remedy ... available to attorneys in your area.") would be that suit would be filed in Ohio. The FDCPA specifically prohibits bringing such suits in distant fora. 15 U.S.C. § 1692i. Either interpretation gives the impression that defendant will take action he cannot take and so creates a false sense of urgency. While these two misleading interpretations are not the only ones which could be given to the letter, an unsophisticated debtor is more likely to believe that suit is imminent in one of those jurisdictions, than to know the truth—that the lawyer sending the letter can not legally take immediate action. As the Supreme Court has noted, "one who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line." *F.T.C. v. Colgate–Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904 (1965) (Federal Trade Commission Act case) (citation omitted).

■ Claims of deception are correctly handled by considering "[t]he clear import of the language, taken as a whole[.]" *Pipiles v. Credit Bureau of Lockport,* 886 F.2d 22, 25 (2d Cir.1989). Taking this approach, I have no difficulty in finding that the letter deceptively created the impression that legal proceedings were more imminent than they were. Even if plaintiff had resided in Ohio, defendant could only

have initiated legal proceedings against her after the account had been returned to the collection agency *and* the agency then requested that suit be filed. *See* Affidavit of James Gaynor attached to Defendant's Statement of Material Facts in Dispute (filed Feb. 8, 1989) at ¶ 4. According to defendant's account of his standard procedure, *id.*, if plaintiff were not to dispute the debt, the result would *not* be that defendant and others (the only possible construction of "we") might be forced to file suit, but only that defendant would return plaintiff's account to the collection agency. It would then be up to the collection agency whether to sue. Even if it were to do so through Mr. Gaynor, he would have to hire local counsel. In short, actual legal proceedings were not imminent, but an unsophisticated, or even a "reasonable", debtor had no way of knowing that.

The misrepresentation about the immediacy of litigation goes beyond defendant's not being licensed to practice in Connecticut and not yet being authorized to file suit. I find the list of possible remedies particularly intimidating, and particularly extraneous for any purpose other than bullying plaintiff. *Cf. Floersheim v. F.T.C.*, 411 F.2d 874, 877 (9th Cir.1969), *cert. denied*, 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970). Faced with such a list of dire consequences, an unsophisticated debtor cannot help but feel unduly threatened. While the qualifying phrases "after judgment" and "available to attorneys in your area," make these possible consequences technically true, they do nothing to make their enumeration less intimidating or to create a more accurate *impression* upon a layman. "[A] statement which is literally true may, nonetheless, be unlawfully deceptive." *Bailey Employment Sys. v. Hahn*, 545 F.Supp. 62, 67 (D.Conn. 1982) (Daly, J.), *aff'd*, 723 F.2d 895 (2d Cir.1983).

### B.

Plaintiff also claims that the letterhead and signature misrepresented the source of the letter. I find this claim well founded. One's natural assumption is that mail comes from the address listed on its letterhead and that it is generated by the employees of the signatory, if not under his immediate or personal direction. That the letter at issue here was generated on pre-printed stationery by an employee of the collection agency, at a time when defendant knew none of the particulars of this case, acquires added significance in light of its misleading contents. The contents of the letter were designed to inspire false urgency, and the misrepresentation as to its source reinforced that unnecessary panic.

No doubt, the collection agency has a right to initiate suit against plaintiff in Connecticut, and I will assume for the argument that such a suit could and would eventually be brought. Nonetheless, this letter, appearing to come directly from an attorney, is deceptive. Upon receiving such a letter, a layman—even one of some sophistication—would assume the attorney had both the power and authority to file suit immediately. Sending letters which appear to be telegraphs has been found to be deceptive under § 1692e because it generates a similar sense of false urgency. *In re Scrimpsher*, 17 B.R. 999, 1012–13 (N.D.N.Y.1982). *Cf. Trans World Accounts v. F.T.C.*, 594 F.2d 212, 215 (9th Cir.1979) (same in Federal Trade Commission Act context). For the same reason, this court has previously found deceptive an apparently handwritten note by a superior in the collection agency which was actually computer-generated. *Steele, supra*, at 8–10. "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action.... A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir.1989). *Cf. Raymond Woolfolk v. Albert G. Rubin*, Civ. No. N–88–266 (EBB), slip op. (D.Conn. Nov. 9, 1989) (finding out-of-state attorney's letter deceptively intimated immediate suit, even though letter was sent to debtor's attorney).

### C.

Plaintiff claims that the letter violated not only § 1692e (prohibiting "deceptive

practices"), but also § 1692d (prohibiting "oppressive conduct") and § 1692f (prohibiting "unfair practices"). Because I have already found two deceptive practices in violation of the FDCPA and only one is necessary to sustain liability, I need not decide whether the undisputed facts support these other claims.

## V.

For the foregoing reasons, plaintiff's Motion for Summary Judgment (filed Dec. 27, 1988) is GRANTED and defendant's Cross–Motion for Summary Judgment (filed February 8, 1989) is DENIED. On the issue of liability, judgment shall enter in due course in favor of plaintiff. The parties shall submit a proposed joint trial memorandum, regarding the trial on the issue of damages, by no later than December 14, 1989.

It is so ordered.