**Andrew J. O'CONNOR, Plaintiff,**

**v.**

**CHECK RITE, LTD.; and Jon R. Hawks, Ltd., Defendants.**

No. 96–K–1856.

United States District Court,
D. Colorado.

Aug. 4, 1997.

Donald J. Banovitz, Hughes Clikeman & Associates, P.C., Denver, CO, for Plaintiff.

William J. Leone, Cooley Godward, L.L.P., Denver, CO, Michael L. Hutchinson, Treece, Alfrey, Musat & Bosworth, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KANE, District Judge.

Before me are three cross-motions for summary judgment. For the reasons set forth below, I deny Plaintiff Andrew J. O'Connor's motion for summary judgment against Defendants Jon Hawks, Ltd. ("Hawks") and Check Rite, Ltd. ("Check Rite"); grant Hawks' cross-motion for summary judgment against O'Connor; partially grant and partially deny Check Rite's summary judgment motion; and grant Hawks' request for attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

O'Connor brought this law suit against Defendants Check Rite, Hawks and Steven J. Goldstein on August 5, 1996 alleging that Defendants' actions in attempting to collect a dishonored check violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (1994) and the Unlawful Debt Collection Practices Act, Colo.Rev.Stat. 12–14–101 et seq. (1991) ("Colorado Act") (Am. Compl. ¶¶ 1–4). O'Connor asserts two claims for relief. O'Connor's first claim alleges violations of three FDCPA provisions §§ 1692c(b), 1692(e)(2)(a)(5)(10) and 1692c(a)(1) (Am.Compl. ¶ 11). The alleged violations include contacting a third party with respect to a debt without prior consent of the consumer, misrepresentation of the imminence of legal action and contacting the consumer at inappropriate times. O'Connor's second claim for relief alleges violations of two Colorado Act provisions, §§ 12–14–105(2) and 12–14–115(1), which prohibit a debt collector from contacting third parties without prior consent of the debtor and from engaging in debt collection without a valid license (Am.Compl. ¶ 14).

O'Connor wrote a check in the amount of $8.04 to Le Francais, Inc., a Boulder bakery (Am.Compl.¶ 6). The check was dishonored for insufficient funds. *Id.* The bakery assigned the debt to Check Rite, a collection agency, for collection. Check Rite subsequently referred the matter to Hawks, a law firm, for collection (Check Rite's Answer ¶ 4). Hawks sent O'Connor two collection letters. In the first letter, dated December 8, 1995, Hawks made a $106.04 settlement offer. In the second letter, dated February 20, 1996, Hawks informed O'Connor that Check Rite intended to bring a law suit if

within fifteen days O'Connor did not pay $48.04, which purportedly included the amount of the bounced check, statutory fees, costs and penalties. (Am.Compl. Exs. B, D; Hawks' Mot.Summ.J. ¶ 1.) O'Connor immediately sent a cashier check to Check Rite in the amount of $8.04 (Am.Compl. ¶ 8; Ex. C). Check Rite refused to accept this payment. After an unsuccessful attempt to collect the debt, Check Rite retained Defendant Goldstein (Check Rite's Answer ¶ 5), an attorney licensed in Colorado, to file a lawsuit against O'Connor in the County Court, County of Boulder, State of Colorado for collection (Goldstein's Mot.Summ.J. Ex. B at 1, 5). This action ensued.

During the discovery stage of this lawsuit, O'Connor failed to comply with the initial voluntary disclosures requirement of Rule 26(a) of Federal Rules of Civil Procedure. I issued an Order on January 22, 1997, compelling O'Connor to make Rule 26(a) disclosures. O'Connor failed to comply with this Order, too. Upon Defendants' Motion for Sanctions for the Plaintiff's noncompliance with the Court's Order, I ruled that none of O'Connor's Rule 26(a) disclosures and expert testimony will be admitted into evidence (Ct. Mins. of 2/11/97). After that, however, I allowed O'Connor to file the deposition of Susan Carter, O'Connor's roommate, taken by Hawks and Check Rite before the Order striking Plaintiff's evidence (Minute Order of 3/27/97.)

O'Connor and Goldstein have settled and on February 13, 1997, I signed an Order dismissing with prejudice O'Connor's claims against Goldstein asserted in the Plaintiff's Amended Complaint. The remaining parties have moved· for summary judgment. Check Rite argues that, because all of O'Connor's evidence · was stricken pursuant to the Court's Order, he can not present .any genuine issue of material fact and can not establish a prima facie case under any of his unfair debt collection claims. Accordingly, Check Rite asserts, it is entitled to summary judgment as a matter of law. O'Connor disagrees, pointing to the deposition of Susan Carter. O'Connor argues Carter's deposition raises a genuine issue of material fact regarding whether Check Rite improperly communicated with third parties in violation of §§ 1692c(b) and 12–14–105(2). O'Connor also claims he is entitled to summary judgment as a matter of law because the letters of December 8, 1995 and February 20, 1996 on their face violate the FDCPA and the Colorado Act. Defendants deny any violations and maintain they are entitled to summary judgment as a matter of law.

## II. *STANDARD ON SUMMARY JUDGMENT*

Summary judgment is appropriate when the ˙pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. *Kaul v. Stephan,* 83 F.3d 1208, 1212 (10th Cir.1996). The relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir.1993). Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson,* at 252, 106 S.Ct. at 2512.

■ These standards do not vary when ruling on cross-motions for summary judgment. *Suburban Trust and Savs. Bank v. University of Del.,* 910 F.Supp. 1009, 1013 (D.Del.1995). Each must be considered independently and all reasonable inferences from the record must be drawn against the party whose motion is under review. *Id.; Gaetano v. Payco of Wis., Inc.,* 774 F.Supp. 1404, 1407 (D.Conn.1990).

## III. *DISCUSSION*

Plaintiff and two Defendants seek summary judgment. When parties have filed cross-motions, as here, each of them contends no issues of material fact exist and

each of them is entitled to judgment as a matter of law. *International Bhd. of Elec. Workers, Local 1522 v. AT & T Microelectronics, Inc.,* 909 F.Supp. 294, 296 (E.D.Pa. 1995). This case raises only issues of law and is thus suitable for resolution by summary judgment. *See Id.*

A. *O'Connor's Motion against Hawks*[1]

The alleged violations of the FDCPA and the Colorado Act by Hawks arise from two collection letters sent by Hawks to O'Connor in an attempt to collect the $8.04 debt. I consider these letters separately.

1. *Letter of December 8, 1995 ("December Letter")*

The December Letter is the initial communication Hawks sent to O'Connor. In it, Hawks informed O'Connor that Check Rite had referred to Hawks O'Connor's account for collection. The December Letter specifically offered to settle the matter for $106.04 "*before* any decision is made to seek recovery" (Am.Compl.Ex.B). The December Letter compares the amount of settlement with "possible liability under state law if judgment is entered" against debtor. *Id.* The front of the December Letter contains a statement that this letter "may be deemed an attempt to collect a debt." *Id.* One line below this statement in bold large type letters states **"See NOTICE on the reverse side."** *Id.* The reverse side of the December Letter in bold large type size reprints the statutorily required notice stating, among other things, that it is "an attempt to collect the debt." *Id.*

O'Connor claims the December Letter violates §§ 1692e, 1692e(11) and 1692e(2)(A) because it fails to state on its face that it is an attempt to collect a debt, contains a misleading title of "offer and settlement" and deceives O'Connor into believing that a lawsuit has already been filed. I will address each of these claims.

a. *O'Connor's § 1692e(11) Claim*

O'Connor argues that the language on the front of the December letter stating that "this may be deemed an attempt to collect a debt" provided him with inadequate notice

under § 1692e(11). Hawks contends that the reverse side of the December Letter contains such notice and that the reference to that notice on the front of the letter is clear and unambiguous. Thus, the issue is whether the statutorily required notice on the reverse side of a debt collection letter with clear reference to it on the front comports with § 1692e(11).

Section 1692e(11) provides that all communications of a debt collector with a debtor must state clearly that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." The FDCPA provides no restrictions as to the size, type, color or placement of the required notice. However, the notice must be conveyed effectively to the debtor, it must be large enough to be read easily and sufficiently prominent to notice. *Swanson v. Southern Or. Credit Serv.,* 869 F.2d 1222, 1225 (9th Cir.1988). If the notice is placed on the reverse side of a communication, some clear reference to that language must appear on the face of that document. *Gaetano,* 774 F.Supp. at 1411; *Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701, 703 (D.N.D.1980).

Contrary to O'Connor's contentions, there is no genuine issue as to the adequacy of the notice. The reference on the front of the December Letter clearly and conspicuously indicates to the reader that the reverse side of the letter contains important information warranting attention. The reference is printed in large bold type, and the type size used for the word "NOTICE" contained in the reference is the largest on the front page (except for the Letterhead). I find the notice and the reference to it on the front of the December Letter complies with § 1692e(11) as a matter of law. As such, I deny O'Connor's motion for summary judgment on the claim for the violation of statutorily required notice under § 1692e(11) and order judgment enter in favor of Hawks on this claim.

b. *O'Connor's § 1692e and § 1692e(2)(A) Claims.*

Next O'Connor contends that by entitling the December Letter an "Offer of Set-

---

**1.** Because Check Rite's liability is derivative of Hawks' I will consider O'Connor's Motion against Hawks first, although Check Rite filed its motion first.

**1016**

tlement" Hawks misleads him as to the nature of the communication in violation of §§ 1692e and 12–14–107, which prohibit a debt collector from using a "false, deceptive, or misleading representation in connection with the collection of any debt." Further, O'Connor claims that because of its title and the language comparing the amount of settlement and the amount of possible liability "if judgment is entered," the December Letter implies that a lawsuit has already been filed and thus, misrepresents the legal status of the debt in violation of the federal and state acts.

Although no court in this circuit has addressed the issue, other courts apply the standard of the "least sophisticated consumer" to determine whether challenged debt collection activity violates § 1692e.[2] *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). Under any standard, however, the December Letter on its face does not violate the FDCPA or the Colorado Act for the following reasons.

■ "[C]laims of deception in debt collection notice are handled by considering the clear import of the language, taken as a whole." *Rosa v. Gaynor*, 784 F.Supp. 1, 4 (D.Conn.1989). The December Letter specifically stated that "[we] offer you an opportunity to settle this matter *before* any decision is made to seek recovery of the Total Possible Liability . . . ." (Hawks' Resp. Mot.Summ.J.Ex. B). Other statements in the December Letter regarding O'Connor's possible liability were used to illustrate potential consequences for O'Connor if legal action was initiated against him. Considering the December Letter as a whole, O'Connor's claims of deception simply fail to create a triable issue of fact.

I agree with Hawks that the cases cited by O'Connor, *Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir.1989) and *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir.1982), are clearly distinguishable from the case at hand. Both cases involved violation of § 1692e(5) prohibiting a debt collector from threatening to take any action that cannot

legally be taken or that is not intended to be taken, which is a different claim than those at issue here. Further, these cases are distinguishable on their facts. In *Baker*, a debt collection communication stated that it was the debt collector's policy to settle debt collection outside of court and then went on to say that, unless the debt collector received payment, it would "proceed with collection procedures." *Baker*, at 778–79. The court held that the debt collector violated § 1692e(5) because "collection procedures" could mean court action when the debt collector had no intention of pursuing it. *Id.* at 779.

In *Crossley*, an attorney sent a collection letter to a 68 year old woman which stated that, unless he received an "immediate payment of full amount of the plaintiff's damages and costs," he "will be compelled to proceed with suit." *Crossley*, at 567. In the letter and subsequent telephone conversation, the attorney also threatened foreclosure on debtor's house if the payment was not received within one week. *Id.* at 567–68. The court held that the attorney had violated § 1692e because the terms "plaintiff" and "costs", which he used in his letter, created an impression that a lawsuit had already been filed. In addition, the court reasoned, the attorney knew that he could not institute mortgage foreclosure proceedings before giving thirty days' notice to the debtor. *Id.* at 571.

Unlike the written communications in *Baker* and *Crossley*, the December Letter was not ambiguous as to the possibility of a legal action against O'Connor. It conspicuously stated the decision to institute an action against O'Connor had not been made. Also, the December Letter did not make any threats to make O'Connor pay his debt.

Based on the foregoing, I deny O'Connor's motion for summary judgment on the claims for violation of §§ 1692e, 1692e(2)(A) and 12–14–107 and grant the motion in favor of Hawks on these claims.

**2.** Because the language of the Colorado Act and the FDCPA provisions discussed in this memorandum are substantively identical, any discussion of the FDCPA violations shall be deemed to apply to the respective Colorado Act violations.

## 2. *February 20, 1996 Letter ("February Letter")*

O'Connor asserts that the February Letter violates the FDCPA and the Colorado Act in two respects. First, he claims Hawks sent the February Letter after O'Connor asked it to cease all communications in violation of §§ 1692c(c) and 12–14–105(3)(a). Secondly, O'Connor maintains that because Jon Hawks, as an attorney, is not licensed to practice law in Colorado, the nondisclosure of this fact in the February Letter violated §§ 1692e(5) and 12–14–107(I)(e) which forbid a debt collector from threatening "any action that cannot legally be taken or is not intended to be taken." (Pl.'s Mot.Summ.J. at 4–5.)

### a. *The § 1692c(c) and 12–14–105(3)(a) Claims.*

■ Section 1692c(c) of the FDCPA provides that if a consumer makes *written* request to a debt collector to cease communications, "the debt collector may not communicate further with the ⸱ consumer with respect to a debt except to advise the consumer that the debt collector's efforts are being terminated; to notify the consumer that the debt collector or creditor may invoke … or intends to invoke a specified remedy."

O'Connor asserts that at some time before February 20, 1996, he requested that Hawks cease all communications regarding the debt. The only evidence he offers to support his claim is the February Letter itself, which refers to § 1692c(c). O'Connor's point, it appears, is that Hawks would not mention this provision unless he had received the requisite request from O'Connor. (Pl.'s Mot. Summ.J. at 4; Pl.'s Reply Supp. his Mot. Summ.J. at 2.) O'Connor offers no letter or affidavit to show he made the request in writing, as required by the statute, and the February Letter makes no mention of it anywhere in the text.

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing, on the basis of admissible

evidence, sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.,* at 322, 106 S.Ct. at 2552; *United States v. Pent–R–Books, Inc.,* 538 F.2d 519, 529 (2d Cir.1976).

To prevail on his claim for violation of § 1692c(c), O'Connor must come forward with admissible evidence to establish the elements of such claim. This O'Connor has not done. While it is unclear why Hawks referred to § 1692c(c) in the February Letter, this reference alone is an insufficient basis upon which to submit O'Connor's claim to a jury.

Accordingly, I deny summary judgment on the claim for violation of §§ 1692c(c) and 12–14–105(3)(a).

### b. *O'Connor's §§ 1692e(5) and 12–14–107(e) Claims.*

■ O'Connor's second claim is that the February Letter violated §§ 1692e(5) and 12–14–107(e) by threatening to take legal action which Hawks could not or did not intend to take. In essence, O'Connor contends that because Jon Hawks, as an individual attorney, is not licensed to practice in the State of Colorado, he could not legally bring an action to collect the debt in Colorado. Because Jon Hawks did not disclose that fact in the February Letter, O'Connor maintains he threatened legal action that he could not take. This argument is without merit.

■ In the February Letter, Jon Hawks stated that "[o]ur firm has recommended to Check Rite that legal action be initiated against you … [i]f legal action is taken and a lawsuit is filed, it will be handled by an attorney within your state" (Hawks' Resp. to Pl.'s Mot.Summ.J.Ex. B). This language explicitly states to even the most unsophisticated consumer that if a legal action is brought it will not be handled by the Hawks' law firm or by Jon Hawks individually. Check Rite hired Steven Goldstein, an attorney licensed in Colorado, to file a law suit against O'Connor. O'Connor knew of that fact because he named Goldstein as one of the defendants to this lawsuit. Furthermore, an attorney does not falsely represent that he is licensed in a

certain state merely by seeking to collect debt in that state. *Gaetano,* 774 F.Supp. at 1415. Accordingly, Hawks did not misrepresent the fact that he is not licensed in Colorado by sending collection letters to O'Connor.

Finally, *Rosa,* 784 F.Supp. 1, the case on which O'Connor relies to support this claim, is clearly distinguishable from the case at hand. There, the collection letter signed by an out-of-state attorney not licensed to practice law in the debtor's state provided that "[if the debt is not paid] we may be forced to proceed with a lawsuit." *Id.,* at 2. Applying the least sophisticated consumer standard, the court held that the letter violated § 1692e(5). In particular, the court found that because the letter did not disclose that the attorney was not admitted to practice in the debtor's state the letter gives an impression of a false sense of urgency. *Id.,* at 4. More importantly, however, the court noted that the letter was misleading because it did not indicate that the collection agency, not the attorney, makes a decision on filing a law suit, and that if it were to do so through the attorney, the latter would have to hire local counsel. *Id.,* at 4–5.

Unlike the letter in *Rosa,* the February Letter specifically stated that Hawks had recommended to Check Rite that legal action be initiated against O'Connor and that if such action were taken and a lawsuit were filed, it would be handled by a Colorado attorney. Thus, the February Letter indicated that Check Rite will make a decision whether to sue. Moreover, the fact that Check Rite, not Hawks, hired Steven Goldstein to file a law suit supports this indication.

For the foregoing reasons, the February Letter did not violate §§ 1692e(5) and 12–14–107(e). Accordingly, I deny summary judgment on this claim.

### B. *Hawks' Motion for Summary Judgment.*

Hawks' summary judgment motion is twofold. First, Hawks seeks dismissal of claims that were not included in O'Connor's summary judgment motion but were stated in the Complaint and the Amended Complaint. Second, Hawks seeks dismissal of claims that the two letters discussed above facially violated the FDCPA and the Colorado Act. Be-

cause I deny O'Connor's motion for summary judgment against Hawks on all claims, and because there is no genuine issue of any material fact with respect to those claims, I grant Hawks motion for summary judgment on the claims with respect to the December and February Letters.

As to the claims not addressed in the O'Connor's summary judgment motion, their resolution requires less elaborate examination. Hawks seeks dismissal of these claims on the following grounds.

■ Hawks asserts that contrary to O'Connor's allegations Hawks had not contacted him before 8:00 a.m. and after 9:00 p.m. in violation of §§ 1692c(a)(1) and 12–14–105(1)(a). Hawks offers a detailed telephone log which automatically logs all out going and in coming calls to show that no call was made at an improper time. (Hawks' Mot.Summ.J. at 7, Ex. C). O'Connor's claim should be dismissed because it is not only unsupported by any evidence, but is also challenged by undisputed evidence offered by Hawks.

■ Hawks next claims he did not violate §§ 1692c(b) and 12–14–105(2), which forbid debt collectors from communicating with third parties with regard to collection of the debt without prior consent of the consumer or the permission of the court. To support its claim, Hawks offers excerpts from depositions of two of O'Connor's roommates who testified that they never spoke with or received any communications from Hawks regarding the debt (Hawks' Mot.Summ.J.Ex. E). Because, this evidence tends to prove Hawks' claim and O'Connor has not offered any evidence to prove this allegation, claims for violation of § 1692c(b) and 12–14–105(2) must be dismissed.

■ Lastly, Hawks contends that contrary to O'Connor's allegations, Hawks has been licensed to collect debt in Colorado at all relevant times as required by § 12–14–102. To support this contention, Hawks introduced two letters from the Colorado Collection Agency Board and a debt collector's registration form issued in the name of one of Hawks' non-attorney employees (Hawks'

Mot.Summ.J.Ex.G). In addition, as an attorney-at-law Hawks is exempt from licensing requirements pursuant to § 12–14–103(e)(II). Accordingly, Hawks must prevail as a matter of law and should receive summary judgment on this claim.

Finally, Hawks requests attorney fees pursuant to Colo.Rev.Stat. § 13–17–102 (1987). Section 13–17–102 allows the court to assess reasonable attorney fees "against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification ... [which] means substantially frivolous, substantially groundless, or substantially vexatious." Subsection 13–17–102(6) forbids the award of attorney fees against a pro se litigant, except where the pro se party is an attorney licensed to practice in Colorado, unless the court finds that pro se party "clearly knew or reasonably should have known that action or defense, or any part thereof, was substantially frivolous, substantially groundless, or substantially vexatious." A claim is frivolous if no rational argument based on evidence or law is presented, and claim is groundless if it is not supported by credible evidence. *Schmidt Constr. Co. v. Becker–Johnson Corp.*, 817 P.2d 625, 627 (Colo.App.1991).

O'Connor asserted claims against Hawks for seven violations of the FDCPA and the Colorado Act. As shown above, these claims were not supported by rational arguments or credible evidence. In addition, O'Connor made no effort to determine the validity of his claim that Hawks is not licensed to collect debts in Colorado.

I note that as early as September 13, 1996, only one month after O'Connor filed this lawsuit, I admonished both parties that if this case went forward, I would assess attorney fees. *See* Courtroom Mins. of Sept. 13, 1996. Notwithstanding this fact, O'Connor proceeded with his claims. Along the way, he ignored the local rules of this Court and the

rules of discovery, Fed.R.Civ.P. 26(a), and this Court's Orders mandating him to do so. Although O'Connor was a pro se party for the first four months of this action,[3] I find that as an attorney, he reasonably should have known his action was substantially frivolous and groundless.

Exercising my sound discretion under § 13–17–103 C.R.S. (1987) I find O'Connor's action against Hawks substantially frivolous and substantially groundless, and, thus, grant Hawks' request for attorney fees.

### C. *O'Connor's Motion to Join Check Rite in His Summary Judgment Motion against Hawks.*

O'Connor moved to join Check Rite in its summary judgment motion against Hawks on the theory of vicarious liability. O'Connor asserts that under a recent Colorado Court of Appeals decision a collection agency is vicariously liable for attorney's FDCPA violations if the attorney and the collection agency, as his client, are both debt collectors under the FDCPA. *First Interstate Bank of Fort Collins v. Soucie*, 924 P.2d 1200, 1202 (Colo.App.1996). However, because I grant summary judgment in favor of Hawks on all O'Connor's claims against Hawks for violation of the FDCPA and the Colorado Act, it follows that O'Connor should be denied summary judgment on this claim as well.

### D. *Check Rite's Summary Judgment Motion.*

Check Rite seeks dismissal of all claims against it on the ground that O'Connor has not and will not introduce any evidence to make out a prima facie case or to establish the existence of a genuine issue of material fact because the Court has ordered all of Plaintiff's evidence stricken. O'Connor responds that the genuine issue of material fact is whether employees of Check Rite communicated with the third parties in regard to the debt in violation of §§ 1692c(b) and 12–

---

**3.** O'Connor represented himself from August 5, 1996 until December 5, 1996, when counsel entered its appearance on his behalf. While O'Connor may or may not have been licensed to practice in Colorado at that time (there is some indication in the record that he had taken, but had not passed, the bar exam), he is a Law school graduate and received several warnings from the Court to consider the relative merit of his claims before proceeding further. (*See e.g.*, Courtroom Mins. of 9/13/96.) These warnings went unheeded both before and after O'Connor retained counsel.

14–105(2), and that the deposition of Susan Carter, O'Connor's roommate, is evidence of the above violation (Pl.'s [Resp.] Mot. Summ.J. ¶¶ 2–4). I have allowed O'Connor to file this deposition with the court. Thus, I will consider it for the purpose of the summary judgment motion.

■ Section 1692c(b) of the FDCPA forbids a debt collector, except as provided in § 1692b with respect to location of information, from communicating to third parties about the debt without prior consent of a consumer or the permission of a court. Section 1692a(2) defines "communication" as "conveying of information regarding a debt directly or indirectly to any person through any medium." Further, § 1692b provides that when a debt collector communicates with a third party regarding the location of a consumer he may identify himself but "may not state that such consumer owes any debt." Since the FDCPA is a strict liability statute, a plaintiff need only show one violation of its provisions to be entitled to summary judgment. *Gaetano*, 774 F.Supp. at 1407 (applying § 1692k(a)).

■ In her deposition, Susan Carter testified that she "clearly" remembers receiving a telephone call for O'Connor from Check Rite stating that "It's Check Rite, regarding a bounced check from Le Francais" (S.Carter's Dep. ¶ 16 at 9, ¶¶ 3–4 at 10). Check Rite has not offered any evidence rebutting Susan Carter's testimony. Applying the Rule 56 summary judgment standard, O'Connor must be found to have established that Check Rite violated § 1692c(b) by conveying to Susan Carter information about his debt. However, because O'Connor can prove no damages as a result of this violation, judg-

ment will enter against Check Rite on this claim in the amount of $.01.

Lastly, O'Connor alleges that as a result of Defendants' violations he suffered headaches, and embarrassment, and emotional distress (Am.Compl.¶ 9), and that, therefore, Defendants are liable for actual damages and additional damages, as well as attorney fees and costs pursuant to 15 U.S.C. § 1692k and § 12–14–113 C.R.S. (Am.Compl.¶ 16.)[4] However, O'Connor has not offered any admissible evidence proving his physical and mental sicknesses.[5] As such, O'Connor may not receive any actual damages.

■ To the extent "additional damages" are available in cases where plaintiff has proven no actual damages, the award of such additional damages is left to the court's discretion. Further, in determining the amount of liability of a debt collector, § 1692k(b) requires the court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." Considering the fact that Check Rite's non-compliance with the statute was merely technical and that it was neither frequent, persistent nor intentional, I hold that O'Connor should not receive any additional damages.

■ With respect to the award of attorney fees and costs under § 1692k(a)(3), courts disagree on whether this FDCPA section requires success in enforcing liability for actual and/or additional damages before plaintiff may be awarded attorney fees and costs. *Compare Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir.1996) (plaintiff must receive actual and/or additional damages to get attorney fees and costs) *with Emanuel v. American Credit Exch.*, 870 F.2d 805, 809

4. Section 1692k, entitled "Civil Liability," provides, in relevant part:

    (a) . . . any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . and (3) in the case of any successful action to enforce the foregoing liability, the

costs of the action, together with a reasonable attorney fees as determined by the court.
15 U.S.C. § 1692k(a). Section 12–14–113(1) C.R.S. (1991) contains identical language.

5. Susan Carter testified that she heard no complaints from O'Connor about his emotional or physical condition, and that she noticed no change in his attitude except that, in her opinion, "he seems to be like spending a lot of negative energy on this [law suit]" (S.Carter's Dep. at 22, 24–25).

(2d Cir.1989) (plaintiff is entitled to attorney fees and costs if he proved violation of FDCPA even if he had proven no actual damages and received no additional damages). I agree with the reasoning and the statutory construction of § 1692k(a)(3) given by the Fifth Circuit in *Johnson*. The statute explicitly states that a plaintiff will be entitled to the costs and attorney fees if he is successful in enforcing "the foregoing liability", i.e. liability for actual and/or additional damages. Because O'Connor failed to enforce any liability for actual or additional damages against Check Rite, he does not meet the explicit requirement of § 1692k(a)(3). Thus, I deny O'Connor's request for attorney fees and costs.

As to O'Connor's other claims for violations of various FDCPA and Colorado Act provisions in the Amended Complaint, O'Connor has not come forward and, under the Order striking Plaintiff's evidence, will not be able to come forward with any evidence that demonstrates a genuine issue for trial. Accordingly, I grant Check Rite summary judgment on claims for violation of §§ 1692e(2)(A), (5) and (10), 1692c(c) and 12-14-115.

## IV. CONCLUSION

Based on the foregoing, I DENY O'Connor's motion for summary judgment on the claims against Hawks; DENY O'Connor's amended motion for summary judgment against Hawks to join Check Rite; GRANT Hawks' summary judgment motion; partially GRANT and partially DENY Check Rite's summary judgment motion against O'Connor; and GRANT Hawks' request for attorney fees.

Even though I found O'Connor technically prevailed on one claim for violation of § 1692c(b) against Check Rite, I declined to award him damages. I find Defendants to have been the prevailing parties under Fed. R.Civ.P. 54(d) and award them costs. The shifting of costs is directly related to O'Connor's lack of discretion in bringing this action and in requiring the expenditure of sorely taxed judicial resources over a matter that, if not entirely frivolous, is clearly petulant.

On or before August 20, 1997 Hawks shall file an itemized statement of attorney fees and costs together with supporting affidavits. O'Connor shall have until August 31, 1997 to file a traverse. If the issue of attorney fees is contested, the matter will be set for hearing, the parties will be required to present expert witnesses and the costs and attorney fees for that hearing will be assessed as the merits thereof suggest.