IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 7, 2001 Session

## ROGER E. WHITE v. K. DAVID MYERS, ET AL.

**Appeal from the Chancery Court for Union County**
**No. 3190      Billy Joe White, Chancellor**

### FILED OCTOBER 31, 2001

### No. E1999-02642-COA-R3-CV

The Plaintiff, Roger E. White, filed suit seeking damages, attorney's fees, and court costs for multiple violations of the Fair Debt Collection Practices Act against two attorneys. Defendant K. David Myers was voluntarily dismissed with prejudice from the suit. Union County Chancery Court granted a motion for summary judgment on behalf of Defendant-Appellee, Roger D. Hyman. The court also granted Mr. Hyman's motion for sanctions against Mr. White and his attorney, J. Philip Harber. Mr. White did not appeal. Mr. Harber filed a notice of appeal as to the award of sanctions and also the amount of the sanctions. We affirm the decision of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

David A. Stuart, Clinton, Tennessee, filed a brief for the Appellant, J. Philip Harber, but thereafter withdrew as counsel. J. Philip Harber filed the Reply Brief and argued the case *Pro Se*

J. Brent Nolan, Knoxville, Tennessee, for the Appellee, Roger D. Hyman

### OPINION

This is an appeal from orders of the trial court granting Defendant-Appellee Roger D. Hyman's motion for sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure and setting the amount of attorney's fees to be awarded as sanctions.

### Proceedings in this Case

The spring from which this action flowed was that Clyde Lee Sweet and his wife held a promissory note from Plaintiff Roger E. White secured with a parcel of real property located in Union County, Tennessee. Defendant K. David Myers, attorney for the Sweets, sent a letter to Mr.

White on March 10, 1997, advising that the semi-annual interest payment on a promissory note dated August 2, 1996 in the principal sum of $40,000 with 7% annual interest was overdue and that the Sweets had declared the entire principal with interest due and payable.  On April 1, 1997, Mr. Myers sent another letter to Mr. White advising that the Sweets requested Mr. Myers, as trustee, to begin foreclosure proceedings.  Mr. Myers enclosed a copy of the Trustee's Notice of Sale advertising the property to be sold on May 1, 1997.  Appellant J. Philip Harber, on behalf of Mr. White, sent a letter dated April 28, 1997, to Mr. Myers advising that Mr. Harber was counsel of record for Mr. White in the foreclosure proceedings and in the case of *White v. Sweets and Myers*.  Mr. Harber also advised that Attorney J. Michael Clement had been engaged by Mr. White to file suit to stop the foreclosure sale scheduled for May 1, 1997, and to seek damages against the Sweets for breach of contract, breach of warranty, fraud, negligence and other miscellaneous violations of Tennessee law, as well as a claim against Mr. Myers for violations of the Fair Debt Collection Practices Act, as codified at 15 U.S.C. 1692, *et seq.*

The record reveals that Mr. Hyman had no association with any of the events listed in the above paragraph.   On May 9, 1997,  he filed an answer and counter-claim on behalf of the Sweets in the suit to stop the foreclosure sale in which Mr. Clement was counsel of record.  The document was served upon Mr. Clement as counsel of record.

On May 15, 1997, six days after Mr. Hyman filed an answer in the foreclosure suit, Mr. Harber filed this present suit in Union County Chancery Court on behalf of  Mr. White, seeking damages, attorney's fee, and court costs alleging  multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692g(a)(1), 1962e(11), 1692g(a)(4), against Mr. Myers and Mr. Hyman.  Mr. White averred that both Defendants were debt collectors as defined in 15 U.S.C. 1692a(6).  On May 27, 1997, Mr. Harber filed an amendment to the complaint averring Mr. Myers and Mr. Hyman were attempting to collect a debt as defined in 15 U.S.C. 1692a(5).

On June 5, 1997, Mr. Hyman filed an answer to the complaint, denying the allegations, and requesting the court to dismiss the complaint against him.  In his answer Mr. Hyman asserted that he had filed an amended counter claim on June 2, 1997, before any responsive pleading to the original counter claim was filed by Mr. White.  A day later, Mr. Hyman filed Requests for Admission and also a set of interrogatories.  There were numerous additional filings in this matter.

On June 19, 1997, the Trial Court held a hearing on the various motions and entered an order on June 27, 1997, setting a scheduling and discovery conference.

Thirty-six days after the complaint in this case was filed, an order of voluntary dismissal with prejudice, as to only Mr.  Myers, was entered on June 20, 1997.

Mr. Hyman filed a motion to compel answers to the interrogatories and requests for production of documents, in addition to a motion for summary judgment with his own affidavit against Mr. White on July 11, 1997.

On July 24, 1997, a hearing was held and the court ordered that Mr. White answer the interrogatories and requests for production of documents. Shortly thereafter, Mr. Hyman filed a notice of taking of the deposition of Mr. White. Mr. White filed responses to interrogatories and requests for production of documents along with a response to requests for admission on July 31, 1997. Mr. White also filed a notice of the taking of deposition of Mr. Hyman.

On August 2, 1997, Mr. Hyman filed another motion for protective order and a motion to strike. Included in the motion to strike was a request for sanctions under Rule 11.03 of the Tennessee Rules of Civil Procedure.

Mr. Hyman was *pro se*, until August 26, 1997, when J. Brent Nolan entered his notice of appearance on behalf of Mr. Hyman.[1]

On September 8, 1997, Mr. White filed a notice setting a hearing on his motion to dismiss. He also filed a response to Mr. Hyman's motion for summary judgment. In support of his response he attached a copy of the complaint in *Pearl Hensley v. John Earl Hensley, Jr., and his wife, Debra Sue Belitz Hensley*, Knox County Chancery Court Docket Number 128968-1,[2] along with an affidavit of an attorney, Charles Terry Webber, stating that the complaint was an attempt to collect a debt as defined in 15 U.S.C. 1692a(5). He further alleged that this case demonstrated that Mr. Hyman was a debt collector under 15 U.S.C. 1692a(6).

On February 18, 1998, Mr. Hyman filed another motion for summary judgment along with statement of material facts not in dispute in support of his motion for summary judgment, a notice of hearing on his motion for summary judgment and a notice of hearing on his motion for Rule 11 sanctions. On March 12, 1998, Mr. Hyman filed another motion for sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. Shortly thereafter, Mr. White filed a supplemental response to the motion to amend, a response to the second motion for summary judgment, and a response to the motion for sanctions.

A hearing was held on the various motions on September 21, 1998. By order entered on December 12, 1998, the trial court granted Mr. Hyman's motion for summary judgment and denied Mr. White's motion to dismiss and his various other motions regarding discovery. In doing so, the Trial Court made the following findings:

> 1. The Defendant Roger D. Hyman is not a debt collector as defined by the Fair Debt Collections Practices Act. Roger Hyman has filed an affidavit stating that he does not collect consumer debts as part of his legal practice. This affidavit was

---

[1]According to the itemized listing of Mr. Nolan's attorney's fees, his charges commenced on August 8, 1997, when Mr. Nolan met with his client for one-half hour and reviewed the file. Mr. Nolan then further reviewed the file and prepared the notice of appearance.

[2]The underlying prayer of relief sought in that suit was that the deed conveying the property be declared null and void.

unrebutted in the evidence produced at the hearing in this cause. Mr. White's Attorney, Phillip Harber, acknowledged in open court that he had reviewed court files in both Anderson and Knox Counties and did not find cases that would indicate Mr. Hyman collects consumer debts as a regular part of his practice. This would provide further support that Mr. Hyman was correct in the assertions contained in his affidavit.

2. There was no communication between Mr. Hyman and Mr. White. The case arises out of a counter-claim to accelerate the terms and conditions of a promissory note. The counter-claim was served upon Mr. White's attorney of record, Michael Clement. This court is of the opinion that filing a legal pleading and serving it upon Mr. White's counsel of record, is not a communication as defined by the Fair Debt Collections Practices Act.

3. The law suit that has been filed against the Defendant/Counter-Plaintiff has no basis in law or fact.

A second order, also entered on December 12, 1998, granted Mr. Hyman's motion for sanctions pursuant to Rule 11 of the Tennessee Rule of Civil Procedure Rule. The Trial Court found that the law suit had no basis in law or fact and was frivolous such as to warrant an award of sanctions, attorney's fees, against Mr. White and Mr. Harber, jointly and severally. Mr. Hyman was to file an affidavit of time and expenses incurred in defending the frivolous lawsuit. The Chancellor found:

1. The Defendant Roger D. Hyman is not a debt collector as defined by the Fair Debt Collections Practices Act. Roger Hyman has filed an affidavit stating that he does not collect consumer debts as part of his legal practice. This affidavit was unrebutted in the evidence produced at the hearing in this cause. Plaintiff's Attorney, Phillip Harber, acknowledged in open court that he had reviewed court files in both Anderson and Knox Counties and did not find cases that would indicate Mr. Hyman collects consumer debts as a regular part of his practice. This would provide further support that Mr. Hyman was correct in the assertions contained in his affidavit. Mr. Harber filed this lawsuit despite having knowledge that Mr. Hyman was not a debt collector as defined by the Fair Debt Collections Practices Act. Such actions are not condoned by this court and sanctions against him and his client are warranted.

2. There was no communication between Mr. Hyman and Mr. White. The case arises out of a counter-claim to accelerate the terms and conditions of a promissory note. The counter-claim was served upon Mr. White's attorney of record, Michael Clement. This court is of the opinion that filing a legal pleading and serving it upon Plaintiff's counsel of record, is not a communication as defined by the Fair Debt Collections Practices Act.

3. The law suit that has been filed against the Defendant/Counter-Plaintiff has no basis in law or fact and sanctions are appropriate against both Mr. White and his counsel of record, Phillip Harber.

On January 11, 1999, Mr. Nolan filed an itemized and verified account of his fees for 25.75 hours at $125.00 per hour for a total of $3,812.50. On February 18, 1999, Mr. Harber filed a response to the accounting. Included in his response were three letters sent by Mr. Nolan in an effort to settle the case.

One day before the hearing, which was held on July 22, 1999, Mr. Nolan filed a supplemented itemized and verified account of his fees of $537.50 (4.3 hours). Additionally, he stated that he would provide orally at the hearing the time spent in preparing for the hearing and attendance at the hearing.

By order entered on July 22, 1999, the Chancellor awarded sanctions of $4,000 in attorney's fees against Mr. White and Mr. Harber, jointly and severely, finding that the amount represented fees that were reasonable and necessary in defending the frivolous litigation. Costs were taxed to Mr. White and Mr. Harber. On the same day Mr. Hyman filed a notice of voluntary dismissal of his counter claim and the Trial Court entered an order dismissing it.

On August 20, 1999, Mr. Harber, *pro se,* on his own behalf only, filed a Notice of Appeal from the "'Order Granting Defendant/Counter-Plaintiff Roger Hyman's Motion for Sanctions Pursuant to Tennessee Rule Of Civil Procedure 11' and from the order entered on July 22, 1999, setting an amount of attorney fees." Mr. White did not file a notice of appeal as to either the granting of the summary judgment, the award of sanctions or the amount of the sanctions.[3]

On November 18, 1999, Mr. Harber filed a statement of the proceedings held on September 21, 1998. Mr. Hyman filed an objection to the statement of proceedings on December 6, 1999. The trial court entered an order sustaining the objection to the statement of proceedings on February 7, 2000. The same day, Mr. Harber filed a motion for the certification and transmittal of a supplemental record with the trial court. On March 20, 2000, Mr. Harber filed a notice of hearing on motion for the certification and transmittal of a supplemental record.

On May 1, 2000, Mr. Harber filed a second proposed statement of the proceedings. Mr. Hyman filed an objection to the statement of proceedings on May 11, 2000, and supplemental objections to the second proposed statement of proceedings on August 24, 2000. By order entered on November 2, 2000, the Trial Court set forth its own statement of the evidence of the hearing held on September 21, 1998, which is as follows:

---

[3]Mr. Harber filed an affidavit and a motion to withdraw as counsel for Mr. White on November 18, 1998, because of a conflict of interest in which Mr. White averred that Mr. Harber did not have permission to file this action for Mr. White. We have not been able to locate a pleading in the record before us that Mr. White signed. Except for an affidavit by Mr. White which was stamped filed on September 21, 1998, all were signed by Mr. Harber on behalf of Mr. White. We do not know to what the affidavit was attached. as an exhibit (1). Subsequently, in February 1999, other counsel for Mr. White, Stewart M. Crane of Loudon, filed an affidavit and a motion requesting permission to withdraw as legal counsel for Mr. White. On March 4, 1999, an agreed order was entered permitting the withdrawal of Mr. Crane.

1.  There was no testimony or other evidence adduced at the hearing on the date aforesaid. Rather, the proceedings consisted entirely of the arguments of counsel and colloquy between counsel and the Court. The Court observed at the outset that the case involved a question of federal law. The arguments and colloquy encompassed all pending motions, including a motion by Hyman to amend his counterclaim, a motion to dismiss Hyman's counterclaim, Hyman's motion for summary judgment, and Hyman's motion for Rule 11 sanctions.

2.  During his arguments, the Appellant, J. Philip Harber, summarized his contentions as set forth in his affidavit and the pleadings, motions and other papers filed with the trial court. He argued that the elements of a counterclaim for malicious prosecution did not exist as there had been no dismissal of the underlying action. He argued that the malicious prosecution suit was untimely, and that damages were not proper under 15 U.S.C. § 1692k because no evidence has been introduced that the original action had been filed in bad faith and for the purposes of harassment, as required by the statute.

3.  The Appellant argued that the Affidavit of Attorney Charles T. Webber, Jr., and a case in which Mr. Hyman acted as a debt collector demonstrated an issue of fact as to whether it was true that Mr. Hyman had never filed a debt collection case, as he had claimed. However, the court determined that such affidavit and case were insufficient to overcome Appellee's motion for summary judgment.

4.  The Appellant explained that he had searched court records for debt collections cases filed by Mr. Hyman, in response to the assertion by Mr. Hyman that he had never filed a debt collection case, but stated that he could not search the files by attorney names.

5.  During his arguments, the attorney for the Appellee summarized his contentions as set forth in the pleadings, motions and other papers, filed on behalf of Roger D. Hyman, as well as the affidavit of Roger D. Hyman. He announced a voluntary dismissal or withdrawal of his counterclaim and motion to amend the same.

### Issues

Mr. Harber presents three issues, which we restate to be 1) whether the Trial Court abused its discretion in awarding Tenn. R. Civ. P. 11 sanctions against Mr. Harber, 2) whether the Trial Court erred in determining the amount of attorney fees to be awarded as part of its Tenn. R. Civ. P. 11 sanctions against Mr. Harber, and 3) whether the Trial Court erred in sustaining Mr. Hyman's objection to the introduction of evidence to demonstrate bias or prejudice, bad faith and/or deceit on the part of Mr. Nolan?

Additionally, Mr. Hyman presents an issue for our review and that is whether this appeal is frivolous and costs should be awarded to Mr. Hyman?

## Discussion

At the outset we point out that only Mr. Harber has filed an appeal, which questions the award of sanctions against him and the amount thereof. There is no appeal by Mr. White of the summary judgment granted against him, nor the award of sanctions against him or the amount thereof.

Rule 11.02 of the Tennessee Rules of Civil Procedure, in effect at the time the case was filed, provided that by signing the document the attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

11.03 Sanctions. - If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below,[4] impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

Therefore, we review the granting of Tennessee Rules of Civil Procedure Rule 11 sanctions under an abuse of discretion standard. ***Andrews v. Bible***, 812 S.W.2d 284 (Tenn.1991). When a trial court decides to impose sanctions on a party, the court's inquiry is very fact intensive and, therefore,

---

[4] Rule 11.03(a) describes the conditions relating to the imposition of sanctions.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, and order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

    (a) Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2).

    (b) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

its decision is given much deference on appeal. ***Krug v. Krug,*** 838 S.W.2d 197 (Tenn. Ct. App. 1992). Justice Drowota in ***Andrews v. Bible*** in addressing Rule 11 sanctions, stated as pertinent here, as follows:

> The certification which results from the attorney's signature on a motion, pleading, or other document is directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. Schwarzer, *"Sanctions Under the New Federal Rule 11 - A Closer Look,"* 104 F.R.D. 181, 186 (1985). *See also, Note, "The Intended Application Of Federal Rule of Civil Procedure 11: An End To The Empty Head, Pure Heart Defense,"* 41 Vand. L. Rev. 343, 361-62 (1988). A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive. *Business Guides v. Chromatic Communications Ent.*, ... U.S.... , 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991); *Cooter & Gell v. Hart Marx Corp.*, 496 U.S.... , 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). "The essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to the [trial judge] that this document is to be taken seriously." *Business Guides*, 111 S.Ct. at 930. The purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility. "The message thereby conveyed to the attorney, is that this is not a team effort but in the last analysis, *yours alone*, precisely the point of Rule 11." *Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). An attorney who signs a paper without the required substantiated belief "shall" be penalized by "an appropriate sanction." This sanction may, but need not, include payment of the other party's expenses. Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, see Advisory Committee notes, any interpretation must give effect to the rule's central goal of deterrence. *Cooter & Gell*, 110 S.Ct. at 2454. *See also, Note, "The Immediate Appealability of Rule 11 Sanctions*," 59 Geo. Wash. L. Rev. 683 (1991) (purpose of Rule 11 is to prevent abusive and dilatory tactics by litigants). The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances, *Business Guides*, 111 S.Ct. at 933, and the reasonableness of the attorney's belief must be assessed in light of the circumstance existing at the time the document in question was signed. 104 F.R.D. at 189. The Advisory Committee notes to the federal version of Rule 11 state that "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]." *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990). One of the clearest and most succinct explanations of the principles associated with a proper Rule 11 analysis was set forth in *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D. Ky. 1987):
> > 1. An attorney must READ every paper before signing it.
> > 2. He must make a reasonable pre-filing investigation of the FACTS.

3. He must research the LAW, unless he is certain he knows it.

4. The law as applied to the facts must REASONABLY WARRANT the legal positions and steps he takes. If existing law does not warrant these positions, a plausible argument for the extension of the law to the facts of the case is required.

5. It must be demonstrated, as the basis of pre-filing investigation and research, that there is a REASONABLE BASIS to name each Defendant named, and to support each claim asserted. The shotgun complaint or answer, filed in the hope that discovery will produce the justification for it, is improper.

6. The adequacy of an attorney's investigation, research and legal analysis will be evaluated by the court under an OBJECTIVE STANDARD, namely, whether the attorney acted as a reasonably competent attorney admitted to . . . practice. Except as to improper purpose, subjective good faith is not a defense to Rule 11 sanctions. A pure heart but an empty head is of no avail.

* * *

8. An attorney must not have an IMPROPER PURPOSE, such as harassment or intimidation, in naming any Defendant, asserting any legal position or taking any legal step.

9. If an attorney violates Rule 11 the imposition of some sanction is MANDATORY, although the nature and extent of the sanction is discretionary with the [trial] court.

*Andrews v. Bible*, 812 S.W.2d at 287-88. (Emphasis in original).

What we must look at is the state of the law at the time this suit was commenced on May 15, 1997, against Mr. Hyman. The Fair Debt Collection Practice Act prohibited "debt collector[s]" from making false or misleading representations and from engaging in various abusive and unfair practices. 15 U.S.C. § 1692(d). The Act's definition of the term "debt collector" included a person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to]. . . another." 15 U.S.C. § 1692(a). And, it limited "debt" to consumer debt, *i.e.*, debts "arising out of . . . transaction[s]" that "are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). *See Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995).

"Regular" is defined by Webster's Third New International Dictionary 1913 (1993) as "steady or uniform in course, practice or occurrence." "Regularly" is defined as "in a regular, orderly, lawful or methodical way."

Whether a person or an entity "regularly" collect consumer debt for purposes of the Act is determined on a case by case basis. Courts have considered several factors in making that determination, including the percentage of revenue generated by debt collection activities, the sheer volume of debt collection activities, and whether the defendant has an ongoing attorney-client

relationship with a collection agency.[5]    Looking at the record we can find no evidence that Mr. Hyman regularly collected consumer debts.

In his motion for summary judgment, Mr. Hyman averred that he did not regularly practice law in the areas or fields of debt collection, he had never handed a consumer debt collection case as defined in 15 U.S.C. § 1692(a) and he was not a debt collector as defined in 15 U.S.C. § 1692a(6). Mr. Harber responded to the motion for summary judgment with an affidavit of an attorney stating that the complaint in *Pearl Hensley v. John Earl Hensley, Jr., and his wife, Debra Sue Belitz Hensley*, Knox County Chancery Court Docket Number 128968-1, was an attempt to collect a debt as defined in 15 U.S.C. 1692a(5), and that *Hensley* demonstrated that Mr. Hyman was a debt collector under 15 U.S.C. 1692a(6).  The fundamental relief sought in *Hensley*, however, was that the deed conveying the property be declared null and void.

Moreover, we suspect the timing of the filing of this suit.  Litigation was commenced by Mr. White against Defendant Myers and the Sweets on May 1, 1997, to stop the foreclosure on the property. On Friday, May 9, 1996, Mr. Hyman filed an answer and a counter-claim on behalf of the Sweets in that suit.  Within six days, including Saturday and Sunday, Mr. Harber instituted this suit against Mr. Hyman.    Based upon *Andrews*, an attorney has not made a reasonable inquiry concerning the facts, if he has not made any inquiry when time permitted him to make a further investigation. The claim must not be asserted against a defendant merely in the hope that discovery will turn up something against that defendant.  Even in his appellate brief one of Mr. Harber's major issues was that the trial court did not permit him to have discovery to prove that Mr. Hyman regularly engaged in debt collection. The burden cannot be shifted to a defendant to prove himself out of the case after filing.

Here, Chancellor White exercised his discretion when he sanctioned Mr. Harber for a Rule 11 violation.  It is a well-established rule in Tennessee that the imposition of Rule 11 sanctions is solely within the discretion of the Trial Court unless an injustice has occurred.   Moreover, if an attorney violates Rule 11 the imposition of some sanction is mandatory, although the nature and extent of the sanction is discretionary. It is the conclusion of this Court that Chancellor White did not abuse his discretion when he ordered sanctions against Mr. Harber and Mr. White.  There are certainly facts contained in the record before us to support a finding on the part of the Chancellor that

---

[5]In *Stojanovski v. Strobl and Manoogian, P.C.,* 783 F.Supp. 319 (E.D.Mich. 1992) the court found that the case law showed that an attorney "who engages in collection activities more than a handful of times per year must comply with the [Act]." *Crossley v. Lieberman*, 868 F.2d 566, 569 (3d Cir.1989) (quoting R. Hobbs, *Attorneys Must Now Comply With Fair Debt Collection Law*, X Pa.J.L.Rptr., No. 46, 3 (Nov. 21, 1987)).  It was the volume of the attorney's debt collection efforts that was dispositive, not the percentage such efforts amounted to in the attorney's practice. *Cacace v. Lucas*, 775 F.Supp. 502, 504 (D.Conn.1990); *In re Littles*, 90 B.R. 669, 676 (Bankr.E.D.Pa.1988), aff'd as modified sub nom., *Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa.1988), aff'd, 868 F.2d 566 (3d Cir.1989); M. Sweig, *Guidelines for Consumer Debt Collection by Attorneys Under the 1986 Amendment to the Fair Debt Collection Practices Act*, 21 New Eng.L.Rev.697, 699 (1987); cf. *Mertes v. Devitt*, 734 F.Supp. 872, 874 (W.D.Wis.1990) (stating that two collection matters per year amounting to less than 1% of the attorney's practice was not "regular" debt collection).

Mr. Harber filed this lawsuit despite having knowledge that Mr. Hyman was not a debt collector as defined by the Fair Debt Collections Practices Act, that the lawsuit had no basis in law or fact, and was frivolous.

The Chancellor awarded $ 4,000 in sanctions for attorney's fees.  Mr. Harber challenges the amount of the award of sanctions and alleges that the Chancellor erred in refusing to admit three letters written by Mr. Nolen during settlement negotiations to demonstrate bias or prejudice, bad faith  and/or deceit on the part of Mr. Nolen. Trial judges have broad discretion over the admissibility of evidence. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn. 1992). Rule 408 of the Tennessee Rules of Evidence provides:

> Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is not admissible to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence actually obtained during discovery merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution; however, a party may not be impeached by a prior inconsistent statement made in compromise negotiations.

As noted  supra, Rule 408 prohibits the admission of evidence obtained during settlement negotiations when such evidence is offered to "prove liability for or invalidity of a civil claim or its amount." Tenn. R. Evid. 408.  Mr. Harber argues that the letters were only offered to demonstrate bias or prejudice, bad faith  and/or deceit on the part of Mr. Nolen.  Actually, it appears that Mr. Harber offered the letters to impeach the statements of Mr. Nolen as to the amount of time he spent defending this frivolous suit.  Rule 408 provides that "a party may not be impeached by a prior inconsistent statement made in compromise negotiations." Consequently, we believe that the Chancellor properly excluded the letters of compromise.

We have examined the time records submitted by Mr. Nolan.  In view of the vexatious documents filed by Mr. Harber, we find them to be quite reasonable.  Therefore, the decision of the Chancellor is affirmed.

Last, we address Mr. Hyman's request that this appeal be declared frivolous.  T. C. A. 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of

a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the Appellee as a result of the appeal.

We find that this appeal is frivolous.

For the foregoing reasons the judgment of the Chancery Court is affirmed. The cause is remanded for a determination of the appropriate damages to be awarded to Mr. Hyman for this frivolous appeal and for collection of costs below. Costs of appeal are adjudged against Mr. Harber and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE